# Exhibit B



June 3, 2015

**VIA ECF**

The Honorable Ron Clark
U.S. District Court for the Eastern District of Texas
300 Willow Street, Suite 221
Beaumont, TX  77701

    Re:    <u>Mark A. Barry, MD v. Medtronic, Inc.,</u> No. 1:14-cv-00104-RC  (Beaumont Division)

Judge Clark,

    Pursuant to the Court's Scheduling Order (Dkt. 46) and related discussions during the May 13, 2015 status conference, Defendant Medtronic, Inc. ("Medtronic") respectfully submits this letter brief detailing why Plaintiff Mark A. Barry, MD ("Dr. Barry") should be precluded from recovering any damages for the period prior to the filing of this lawsuit.

    It is well-settled that 35 U.S.C. § 287(a) prohibits recovery of damages by patentees unless and until notice of infringement is given to the alleged infringer, either by *marking* the patented product with the patent numbers (i.e., "constructive" notice) or by giving the alleged infringer *actual notice* of alleged infringement.[1] Last week, after learning of Medtronic's plan to file the instant motion, Dr. Barry "amended" his sworn interrogatory responses in a desperate attempt to **delete his prior admission** that he and his exclusive licensee, Biomet Inc., had **failed to mark** their commercial products as required by Section 287. Noticeably absent from his amended, unsworn,[2] interrogatory response, however, were any facts or evidence supporting any claim to pre-suit marking or notice of any kind. Instead, having left the interrogatory unanswered in a tactical effort to avoid summary judgment, Plaintiff should be precluded from opposing the issue at-bar. *See Transclean Corp. v. Bridgewood Servs., Inc.*, 290 F.3d 1364, 1369 (Fed. Cir. 2002) (party precluded from disputing issue for failing to answer an interrogatory on that issue).

    Plaintiff's failure to mark, in conjunction with his failure to provide any pre-suit notice to Medtronic, should preclude any pre-filing recovery on the two patents (U.S. Patent Nos. 7,776,072 ("the '072 patent") and 8,361,121 ("the '121 patent"), Exs. 2-3, respectively) for which he is asserting system claims. Pre-suit damages are likewise unavailable for the third patent (U.S. Patent No. 7,670,358 ("the '358 patent"), Ex. 1) containing only method claims, as there can be no pre-suit infringement of that patent. First, there can be no direct infringement because Medtronic itself does not conduct surgeries of any kind, let alone the surgical methods

---

[1] Section 287(a) provides that "[i]n the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice."

[2] Dr. Barry did not verify or sign his amended responses as mandated by Rule 33. *See Johnson v. Derhaag Motor Sports, Inc.*, No. 13-CV-2311, 2014 WL 5817004, at *8 (D. Minn. Nov. 10, 2014), *citing Black Hills Molding, Inc. v. Brandom Holdings, LLC*, 295 F.R.D. 403, 412 (D.S.D. 2013) ("plaintiff's responses to interrogatories are invalid on procedural grounds, regardless of the substance of the answers given" for failure to sign under oath).

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOCA RATON
BOSTON
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MEXICO CITY+
MIAMI
MILAN**
NEW JERSEY
NEW YORK
NORTHERN VIRGINIA
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME**
SACRAMENTO
SAN FRANCISCO
SEOUL∞
SHANGHAI
SILICON VALLEY
TALLAHASSEE
TAMPA
TEL AVIV^
WARSAW~
WASHINGTON, D.C.
WESTCHESTER COUNTY
WEST PALM BEACH

* OPERATES AS GREENBERG TRAURIG MAHER LLP

Honorable Ron Clark
June 3, 2015
Page 2

---

of the '358 patent. Moreover, in the complete absence of any pre-suit notice of infringement, as here, Medtronic cannot be found to have had the pre-suit knowledge of infringement, or intent to bring about that infringement, required under the Supreme Court's reaffirmed indirect infringement standards. Summary judgment on Plaintiff's pre-suit damages claim is warranted.

### I.  Pre-Suit Damages For The '072 And '121 Patents Should Be Barred By § 287(a)

Plaintiff has accused Medtronic of infringing system claims of the '072 and '121 patents and the method claims of the '358 patent. Accordingly, the damages limitation of Section 287 applies to the '072 and '121 patents. Plaintiff must prove that the licensed products which admittedly embody the '072 and '121 patents were continuously marked, or that he provided Medtronic with pre-suit actual notice of infringement, or else no damages should be recoverable for the period prior to the filing of this action with respect to these patents.[3]

### A.  Dr. Barry's Failure to Mark

In the recently filed Joint Status Report (Dkt. 44, pp. 1-2), Plaintiff did not dispute a failure to mark. Instead, he incorrectly asserted that "there is no marking requirement" in this lawsuit because "the patentee has only asserted the method claims" (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) ("35 U.S.C. § 287(a) d[oes] not apply where the patentee only asserted the method claims of a patent which included both method and apparatus claims."). However, as shown in Plaintiff's original infringement contentions (Ex. 7, served July 10, 2014) as well as his amended infringement contentions (Ex. 8, served May 25, 2015), Dr. Barry is asserting only the non-method/system claims of the '121 patent and both method and non-method/system claims of the '072 patent. As a result, both of these patents are subject to the damage limitations of § 287(a). *Id.*; *see also American Medical Sys., Inc. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1538-39 (Fed. Cir. 1993).

As explained above, neither Dr. Barry nor Biomet have marked products with the patents-in-suit. In fact, Br. Barry admitted as much in his original sworn interrogatory responses: "[T]he Biomet Trivium Spinal Derotation System is currently being made, used, sold and offered for sale under the Patents-in-Suit" but ***"none of the components of the Trivium system are marked with one or more of the Patents-in-Suit."*** (*See* Ex. 4, Response to Interrogatory No. 11, p. 20; *see also* Exs. 7-8, original and amended LR 3-1 Infringement Contentions, p. 4, "the Biomet Polaris Deformity System branded line of products and use thereof practices, manufactured and sold by Biomet under a licensing agreement with Dr. Barry, incorporates and/or reflects each and every asserted claim" of the patents).[4] On the eve of this motion, however, Dr. Barry served "amended" interrogatory responses (which were unsigned and unsworn) that ***deleted his sworn admission*** of failure to mark as shown in the redline below:

---

[3] This applies to all of Plaintiff's infringement allegations including his new theories raised for the first time less than a week ago in his "updated" Rule 3-1 Infringement Contentions (Ex. 8). *See Imagexpo, L.L.C. v. Microsoft Corp.*, 299 F. Supp. 2d 550 (E.D. Va. 2003) (applying Section 287(a) to infringement claims under Section 271(f)).

[4] Despite clear awareness of the marking requirements for licensed products, as shown by an earlier draft license agreement containing an explicit marking provision (*see* ex. 10, p. 8, ¶9), Dr. Barry and his counsel apparently did not place the same marking requirement on Biomet.

Honorable Ron Clark
June 3, 2015
Page 3

> … the Biomet Trivium Spinal Derotation System is currently being made, used, sold and offered for sale ~~under the Patents-in-Suit. To the best of Dr. Barry's knowledge, none of the components of the Trivium system are marked with one or more of~~ <span style="color:red">under</span> the Patents-in-Suit.

(*See* Exs. 5 and 6, redline of amended responses). Plaintiff provided no good faith basis or explanation for this material change. Tellingly, Dr. Barry did not replace his prior response with any affirmative statement or evidence of marking. Rather, he left it silent and unanswered on the question of marking. Such deletion of his prior sworn admission cannot be used to create issues of fact where none exist, and should preclude Plaintiff from opposing the issue of pre-suit damages. *See Transclean*, 290 F.3d at 1369; *see also Geiserman v. MacDonald,* 893 F.2d 787, 793 (5th Cir. 1990) (in considering summary judgment, "[t]he court may impose sanctions for a party's failure to answer interrogatories"); *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 617 (5th Cir. 1977) ("[A]n evasive or incomplete answer is equated with failure to answer …."). [5]

The patentee bears the burden of proving compliance with § 287(a). *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 186-87 (Fed. Cir. 1994). In view of the complete failure of proof as to marking of the licensed products, Dr. Barry must prove that he gave Medtronic "actual notice" of purported infringement of the patents-in-suit. *Id.*; *see also Devices for Medicine, Inc. v. Boehl*, 822 F.2d 1062, 1066 (Fed.Cir.1987) (licensee making or selling patented product does so "for or under" the patentee, thereby limiting the patentee's damage recovery when it is not marked); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) ("When a patented article has been produced by a patentee or its licensee, the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occur after notice.").

### B.  Dr. Barry Failed to Give Actual Notice of Infringement Prior to Filing Suit

In addition to failing to mark, it is undisputed that Dr. Barry never affirmatively communicated to Medtronic any specific charge of infringement by any specific accused product until the service of the Complaint in this action. *See Amsted*, 24 F.3d at 187 (Section 287 "requires the affirmative communication of a specific charge of infringement by a specific accused product or device."). Despite the fact that Plaintiff had been aware of Medtronic's accused CD Horizon Legacy VCM (Vertebral Column Manipulation) product for nearly a decade before filing this suit, Dr. Barry never notified Medtronic about any alleged infringement, let alone with the specificity required to constitute actual notice under Section 287. *See Funai Elec. Co., Ltd. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010) ("To serve as actual notice, a letter must be sufficiently specific to support an objective understanding that the recipient may be an infringer."); *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1375 (Fed. Cir. 2008) ("general letters referring to the patent and including an admonishment not to infringe do not constitute actual notice").

---

[5] Dr. Barry's sworn admission in his interrogatory response stood for over 9 months (and for over a year after he filed suit) and cannot now simply be deleted in order to avoid summary judgment. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) ("It is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony.")

In the Joint Status Report (Dkt. 44 at 2), Dr. Barry did not argue that he had affirmatively notified Medtronic of infringement of any specific patent by any specific product. Rather, his vaguely suggested examples of purported notice fall far short of the statutorily required "proof" of actual notice. For example, Plaintiff argued that his "patents" were allegedly "cited as prior art in patent applications filed by Medtronic employees." (*Id.*) However, even if true, Medtronic would still not have received the requisite "affirmative communication" from Dr. Barry of "infringement" as to a "specific accused product."[6] See *Amsted*, 24 F.3d at 187; see also *Gart*, 254 F.3d at 1345 ("[M]ere notice of the patent's existence or ownership is not notice of the infringement, and as such would be insufficient to comply with section 287(a)."). The same goes for Dr. Barry's other bases of alleged notice. According to Dr. Barry, he allegedly gave "presentations" of "his technology" at scientific meetings to physicians, suggesting that Medtronic would have "actual knowledge" of the alleged "invention" from these presentations. (Dkt. 44, at 2). However, none of these presentations involved or were directed to Medtronic, or gave notice of infringement of a specific patent by a specific Medtronic product. Accordingly, these presentations also fail to satisfy the notice requirement of Section 287(a) as a matter of law. See *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1470 (Fed. Cir. 1997). Thus, the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise.").[7] Thus, having failed to prove marking or actual notice of infringement to Medtronic, Plaintiff should not be able to recover pre-suit damages on the '072 and '121 patents. *Id.*; see also *Ultratec, Inc. v. Sorenson Comm'ns, Inc.*, 45 F.Supp.3d 881, 930 (W.D. Wis. 2014) (summary judgment barring recovery of pre-suit damages for failing to prove compliance with marking statute for asserted system claims).

## II. Medtronic Cannot Be Liable For Damages Or Infringement Of Plaintiff's Method Claims Prior To Filing Of This Lawsuit

With respect to the '358 patent (which only contains method claims), Medtronic cannot be found liable for direct infringement under Plaintiff's new 35 U.S.C § 271(a) theory – raised for the first time last week in his updated Rule 3-1 Infringement Contentions (Ex. 8) – as it does not perform the accused surgeries. Accordingly, these allegations should be dismissed.[8]

---

[6] Although it does not constitute notice under Section 287(a), when Plaintiff raised this point in the Joint Status Report, Medtronic checked and was unable to find any instance where Dr. Barry's issued "patents" were cited during prosecution of one its applications. All it could find was the situation where a Barry patent *application* (with no issued patent claims which could be infringed) was included amongst numerous other publications but was never specifically cited as having any particular relevance by the PTO. Notably, Dr. Barry's amended interrogatory responses only allege Medtronic knew of his patent *applications*. (Ex. 5, Amended Resp. to Interrogs. 8 and 9).

[7] Pre-suit damages should also be precluded under the doctrine of laches because Dr. Barry "delayed filing suit an unreasonable and inexcusable length of time after the plaintiff knew or reasonably should have known of its claim against the defendant; and ... the delay resulted in material prejudice or injury to the defendant" including the alleged loss or destruction of highly material documentation, instrumentation and other information concerning prior art surgeries prior to filing of this action. *Wanlass v. Gen. Elec. Co.*, 148 F.3d 1334, 1337 (Fed. Cir. 1998).

[8] Although not needed for the present pre-suit damages motion (since they are subject to the marking statute, per Section I above), summary judgment of no direct infringement of the '072 and '121 system claims is also warranted

_____

Medtronic also cannot be found liable for induced infringement under 35 U.S.C. § 271(b) for a multitude of reasons, but especially not prior to the service of the Complaint. Indeed, for such "indirect" infringement allegations, the Supreme Court recently reaffirmed that the law requires proof that Medtronic had actual knowledge of the patent, knew that the accused acts would infringe, and intended to bring about that infringement. *See Commil USA, LLC v. Cisco Sys., Inc.*, No. 13-896, 2015 WL 2456617, at *6, 8 (U.S. May 26, 2015) (reaffirming that inducement "requires intent to 'bring about the desired result,' which is infringement" and that mere knowledge of the patent is insufficient); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060 (2011) (accused indirect infringer must either actually know of, or be willfully blind to, both the existence of the patent and the fact of infringement). Prior to the filing of the Complaint, the accused VCM product had been publicly available and known to Dr. Barry for a decade, yet he never took any action to bring the patents or his infringement claims to Medtronic's attention. (*See* Ex. 4, response to Interrogatory No. 4 that, "Dr. Barry first became aware of a posterior derotation system offered by Medtronic sometime in 2005."). In the absence of any notice of infringement prior to the filing of this lawsuit, Medtronic cannot be found to have the requisite knowledge of such infringement, or any intent to bring it about and, thus, there can be no pre-suit liability or damages for indirect infringement under § 271(b). *Id.*[9]

For all of the above reasons, Medtronic respectfully seeks judgment that Dr. Barry has no claim to any pre-suit damages as a matter of law. Medtronic also respectfully submits that the unavailability of pre-suit damages should obviate Plaintiff's request for expedited damages discovery and warrants bifurcation of damages for purposes of discovery and trial.[10]

Respectfully submitted,

*/s/ Richard C. Pettus*

Richard C. Pettus, Esq.

_____

because, as a matter of undisputed fact, the accused VCM kits are not, and over the last decade have never been, distributed by Medtronic with derotators "which are mechanically linked," as required by the claims. (*See* Exs. 2-3).

[9] This applies with equal force and effect to Plaintiff's newly-added theories of inducement and contributory infringement under §§ 271 (b) and (c) with respect to the asserted system claims of the '072 and '121 patents. *Id.*, at *1, citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (induced and contributory infringement both require "knowledge of the patent in suit and knowledge of patent infringement.")

[10] On a related note, the discovery requests finally served yesterday by Plaintiff (Ex. 12), are nothing close to the "very specific" damages discovery for the "limited" purpose of determining whether this case "is financially worthwhile or not" that was authorized by the Court (May 13, 2015 Hearing Tr. 31:21, 32:12-16 and 33:15). Rather, Plaintiff's Rule 30(b)(6) notice contains over 30 topics and more than 30 document requests (mostly without any date restrictions), that seek: "Business plans … projections, forecasts, surveys, or evaluation of potential markets, … or competitive analysis" (II.B), "Budgets for research, development, training" (II.C), "Patient Wallet Cards" (III.H), "Promotional, marketing and training materials" (III.D), FDA correspondence (III.F), "organization and structure of the business unit" (VI.B), etc. If anything, these overreaching requests support bifurcation and/or should be stricken.