** NOT FOR PRINTED PUBLICATION **

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MARK BARRY, M.D., | § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION No. 1:14-CV-104 |
| | § | |
| v. | § | JUDGE RON CLARK |
| | § | |
| MEDTRONIC, INC., | § | PRD |
| | § | |
| *Defendant*. | § | |

### ORDER REGARDING PLAINTIFF DR. BARRY'S EMERGENCY MOTIONS FOR A FINDING OF WAIVER OF PRIVILEGE AND DISCOVERY SANCTIONS

Plaintiff Dr. Mark Barry moved the court for a finding that Defendant Medtronic, Inc. waived privilege on approximately 409 documents that comprised Medtronic's August 31, 2016 email production (Dkt. # 360).  Dr. Barry also moved for discovery sanctions, alleging that Medtronic's production was untimely and demonstrated that Medtronic had withheld documents during fact discovery (Dkt. # 364).  At the final pre-trial conference, the court indicated that it intended to conduct an *in camera* review and ordered Dr. Barry to identify the subset of documents that he sought to use at trial.  Final Pre-trial Conference Tr., 104:20–105:14; 109:3-15.  Medtronic, after reviewing the subset identified by Dr. Barry, was to subsequently file a response and state in good faith whether each document was privileged and, if so, explain to the court *why* the document was privileged.  Final Pre-trial Conference Tr., 109:3-24.  Dr. Barry complied with the Court's request (Dkt. # 375), and Medtronic responded (Dkt. # 381 ("Opp.")).

After performing an *in camera* review of the documents identified by Dr. Barry, the court GRANTS AND DENIES IN PART Dr. Barry's motion regarding privilege (Dkt. # 360) and

1

GRANTS AND DENIES IN PART Dr. Barry's motion for evidentiary sanctions (Dkt. # 364). The first step in this analysis is to decide whether a claim of attorney-client privilege or work product protection has been asserted, and if so, whether Medtronic has shown by a preponderance of the evidence that it is entitled to privilege or protection.   Only if a communication is privileged do the clawback provisions of Rule 502 need to be considered.  *See* FED. R. EVID. 502.

## I.   Applicable Law Regarding Privilege

In patent cases, "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, because they relate to an issue of substantive patent law."  *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000) (applying Federal Circiut law to whether the privilege applies to an invention record prepared and submitted to in-house counsel); *see also In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 ("[W]e apply our own law when deciding whether particular documents are discoverable in a patent case because they relate to issues of validity and infringement.") (citations omitted). Therefore, this court applies Federal Circuit law to determine whether the documents at issue are attorney-client privileged or protected under the work product doctrine.

Regional law, however, applies to procedural questions where "any patent involved [is] irrelevant to the question of privilege."  *Spalding*, 203 F.3d at 804.  Therefore, the question of whether and when privilege or protection has been waived—which does not relate to any substantive issues but rather the actions of the parties—implicates regional Fifth Circuit law.  *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001) (citing *Nguyen v. Excel Corp.*, 197 F.3d 200, 206 (5th Cir. 1999)).  Therefore, Fifth Circuit law applies to the waiver analysis.

## 1.  Attorney-Client Privilege

The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law."  *Upjohn v. United States*, 449 U.S. 383 (1981).  Courts rely on the following formulation of when the attorney-client privilege applies:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*See*, *e.g.*, *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998); *U.S. v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997) (all *quoting* 8 John Henry Wigmore, Evidence in Trials at Common Law § 2292 at 554 (McNaughton rev. 1961).  "The central inquiry is whether the communication is one that was made by a client to an attorney for the purpose of obtaining legal advice or services." *Spalding*, 203 F.3d at 805.  The "privilege attaches to a communication made for the purpose of securing *primarily* legal opinion, or legal services, or assistance in a legal proceeding," *Queen's*, 820 F.3d at 1294 (emphasis added), and not communications made to further business decisions. Where "the overall tenor" of the document suggests that it is a request for legal advice or services, the privilege attaches.  *Spalding*, 203 F.3d at 806.

Application of the privilege in the context of a corporation's employees and its in-house counsel is not an issue that implicates a substantive issue of patent law and, therefore, Fifth Circuit law applies.  *See Spalding,* 203 F.3d at 804.  Under Fifth Circuit law, application of the privilege in the context of a corporate client follows the "subject-matter test."  *In re Avantel*, 343 F.3d 311, 321 (5th Cir. 2003).  The subject-matter test, which is broader than the former control-group test that the Supreme Court rejected in *Upjohn*, considers attorney-client privileged those communications between an employee that is made at the direction of his superiors in the corporation, concerns a subject matter upon which the attorney's advice is or has been sought by

3

the corporation, and relates to the performance of the employee's duties of his employment. *Avantel*, 343 F.3d at 315 n.1 (citing *Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 198 (Tex. 1993)).  The subject-matter test also covers communications between a corporation's attorney and its control group, i.e. those vested with authority both to seek legal advice and to participate significantly in the response to that advice.  *Avantel*, 343 F. 3d at 315 n.1.[1]  "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with an attorney." *Upjohn*, 449 U.S. at 395.

Under both Federal Circuit and Fifth Circuit law, the burden of demonstrating the applicability of the privilege falls squarely on the party who asserts the privilege.  *Queen's*, 820 F.3d at 1301 (citing *In re Google, Inc.* 462 Fed. Appx. 975, 922 (Fed. Cir. 2012);  *Hodges, Grant & Kaufmann v. United St*ates*,* 768 F.2d 719, 721 (5th Cir. 1985).

## 2.  Work Product Protection

The Federal Rules of Civil Procedure address work product protection with the following language:

> *(3) Trial Preparations: Materials.*
>
> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial *by or for another party or by or for that other party's representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without

---

[1] The court in *Avantel*, applying Texas law, also articulated this version of the test:  the privilege extends to communications "between representatives of the client or between the client and a representative of the client."  *Avantel*, 343 F.3d at 321 (citing Tex. R. Evid. 403(b)(1)(D)).  The court noted that "representative of client" is defined as: (A) a person having authority to obtain professional legal services, or to act on advice thereby rendered, on behalf of the client, or (B) any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client. *Avantel*, 343 F.3d at 321; *see also Upjohn*, 449 U.S. at 386.

undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3)(emphasis added).  Memorandums, letters, and emails are covered by the protection.  *In re Echostar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006).  However, work product immunity is not absolute and is a qualified privilege.  *Id.*  A party showing "substantial need of the materials in preparation for [its] case" and an inability "without undue hardship to obtain the substantial equivalent" may discover factual and non-opinion work product that does not disclose the "mental impressions, conclusions, opinions or legal theories of an attorney or other representative."  *Id.* at 1302.  Again, as with attorney-client privilege, the burden of demonstrating applicability of work product protection rests on the party invoking it.  *Hodges*, 768 F.2d at 721.

## II.  Analysis as to Both Emergency Motions

The court first sets forth its privilege analysis for those documents submitted for *in camera* review and then, in section (e), addresses Dr. Barry's motion for sanctions.

### a.  Documents that Medtronic has agreed to produce in unredacted form.

Based on the submissions of the parties, Medtronic does not object to producing unredacted versions of the following documents or Dr. Barry's use of the document, at least based on privilege.  It is therefore ORDERED that Medtronic shall produce the documents named within this subsection (a) without redaction by **November 1, 2016, at 4:00 p.m.**

- **8/31/16 Privilege Log Entries # 36-40** (on Privilege log at Dkt. # 375-2, identified by Dr. Barry at Dkt. #375, at 3) – The court was not supplied with a copy of this document, but Medtronic has agreed to produce a copy of this document (Opp. (Dkt. # 381) at 2), which was identified as a memo in its August 31, 2016 privilege log (Dkt. # 381, Ex. A).

- **MED0016829-830** (Tab **I**,[2]  Dkt. # 375-10) – Medtronic has agreed to produce without redaction. (Opp. (Dkt. # 381) at 4).

- **MED00169831-832** (Tab **J**, Dkt. # 375-11) – Medtronic has agreed to produce without redaction. (Opp. (Dkt. # 381) at 4).

- **MED0065031** (Tab **L**, Dkt. # 375-12) – Medtronic has agreed to produce without redaction. (Opp. (Dkt. # 381) at 4).

- **MED0062377** (Tab **M**, Dkt. # 375-14) – Medtronic has agreed to produce without redaction. (Opp. (Dkt. # 381) at 4).

- **MED00114042** (Tab **N**, Dkt. # 375-15) – Medtronic has agreed to produce without redaction. (Opp. (Dkt. # 381) at 4).

- **MED00064937** (Tab **B, Dkt. #375-4**) – This was attached to Barry's submission but it does not appear that Medtronic has clawed back this document (Barry Submission, Dkt. # 375, at 3).

**b.  Documents that Medtronic has not demonstrated are privileged.**

Following an *in camera* review, the court concludes for the reasons set forth below that Medtronic has not met its burden of showing by a preponderance of the evidence that the following documents are privileged.

For the documents listed below, Medtronic cited attorney-client privilege but failed to establish that the documents constitute: (1) communications between Medtronic employees that were made at the direction of superiors; (2) that these communications concern a subject matter upon which the attorney's advice is or has been sought by Medtronic; or (3) that these communications were only between Medtronic attorneys and employees of Medtronic that would be authorized to act in response to the advice.

---

[2] In his October 28, 2016 submission (Dkt. # 375), Dr. Barry provided a set of documents for the court to review (identified by the "Tab" letter), which correlate with the docket numbers appearing as "Dkt. # 375-[number]" cited in this Order.  Dr. Barry also cited in the brief letter brief that he submitted (Dkt. # 375, Main Document) to the documents he wishes to his prior Exhibit marking that was provided in a prior filing, specifically as attached to the Declaration of Sean DeBruine that was submitted in its original emergency motions, Dkt. # 364.   For the sake of clarity, the court in this Order refers to the documents by Bates number, tab number as presented to the court through chambers' copies of Dr. Barry's October 28, 2016 submission, and the docket number as it appears on Dkt. # 375.

For instance, with regards to certain emails (Dkt. # 375-3; Dkt. # 375-5), Medtronic did not identify to the court, through its privilege log or otherwise, the employer of, or status as an attorney for Medtronic of, all of the individuals who made, or received copies of, these communications.  Medtronic did not show that the underlying facts in those emails or the emails themselves concerned a subject matter on which attorney's advice was sought by Medtronic.  To the extent that these may be communications among Medtronic employees that were authorized to act on the legal advice—which is not clear to the court—Medtronic has not demonstrated that these communications qualify as legal advice rather than more generally relate to business decisions concerning finances or sales of products, etc.  In today's corporate environment, in-house legal counsel is often asked for input on and provides advice related to business decisions.

Therefore, while Mr. Willis may be an attorney, Medtronic has not met its burden to prove that these communications are privileged.[3]  "Attorney-client privilege" is not a magical incantation that invokes a veil of secrecy upon documents; it is a privilege based on facts, which must be presented by the party claiming that privilege.

Because Medtronic failed to demonstrate that these are privileged communications, the court need not consider whether a waiver occurred or whether a clawback was justified.

It is therefore ORDERED that Dr. Barry may use the unredacted production-versions of these documents at trial, subject to other non-privilege objections that Medtronic makes at trial,

_____

[3] To the extent that Medtronic is relying on its privilege logs to prove that these documents are privileged, Medtronic's privilege log entries are insufficient.  *See* Medtronic's Email Production Privilege Log, Dkt. 375-1, Tab **A;** *see also* Medtronic's Email Production Supplemental Privilege Log at Dkt. # 360-06.  Medtronic's privilege logs in many instances simply describe the communication as "Email from [Party] to [Party] seeking legal advice on Barry IP" (Dkt. 375-2 at 7) or "Redacted request for legal advice, legal strategy, reflection of legal analysis." (Dkt. # 360-6 at 20)   These descriptions alone, without any further explanation from Medtronic in its responsive briefing (Dkt. # 381) is not sufficient to meet its burden.

and that in the case of documents that Medtronic has not yet produced in unredacted form, that

Medtronic produce the unredacted versions by **November 1, 2016, at 4 p.m.**

- **MED00159478-79** – (Tab **B**, Dkt. # 375-3) - For the reasons above, Medtronic has not proven that these communications are attorney-client privileged. On this set of emails in particular, Medtronic has not explained who is Frank Bono, the sender of one of the emails (MED00159478) that was redacted, or who is Doug Baker [MSD], a recipient. Medtronic has also redacted an email (MED00159479) between Rodney Ballard and several unidentified individuals but not identified any as an attorney or demonstrated why this constitutes a request for legal advice. Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **MED00189178** (Tab **D**, Dkt. # 375-5); also appears at Privilege Log (Dkt. # 375, Ex. A), Entry # 35 – For the reasons above, Medtronic has not proven that these communications are attorney-client privileged. The emails in this particular string also imply that the communications were made in relation to a business decision rather than for the purpose of seeking legal advice, and Medtronic has not proven otherwise, even in the email from Mr. Carson to Mr. Willis at the top of MED00189178. Forwarding the email string to an attorney does not render the underlying communications privileged. Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **MED0014230-14326** (Tab **Q**, Dkt. # 375-16) – For the reasons above, Medtronic has not proven that these communications are attorney-client privileged. For this presentation in particular, Medtronic did not identify any of the parties named in the presentation as lawyers. Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **MED00014236-37, MED00014228, MED00014162** (Tabs **P and Q**, Dkts. ## 375-17, 375-18) – These appear to be emails related to the PowerPoint presentation appearing as PX 393 (see above). For the reasons above, Medtronic has not demonstrated that these are attorney-client privileged communications. Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **MED00070737** (Tab **R**, Dkt. # 375-19) – For the reasons above, Medtronic has not demonstrated that these are attorney-client privileged communications. Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **MED000147558** (Tab **S**, Dkt. # 375-20) – For the reasons above, Medtronic has not demonstrated that these are attorney-client privileged communications. Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **MED000159596-159772** (Tab **T**, Dkt. # 375-21) – For the reasons above, Medtronic has not demonstrated that these are attorney-client privileged communications.  Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **Privilege log entries #9-13** (on Privilege log at Dkt. # 375-2, identified by Dr. Barry at Dkt. # 375, at 3). The court was not supplied with these emails.  Based on the descriptions provided in the privilege log, Medtronic not demonstrated that these emails are attorney-client privileged.  Medtronic states that it intends to produce a redacted version of these entries (Opp, Dkt. # 381, at 3).  Based on the fact that Medtronic has not met its burden, **it is therefore ORDERED that Medtronic shall produce unredacted versions to Dr. Barry by November 1, 2016, at 4:00 p.m.**  Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **Privilege log entries ## 81-86** (on Privilege log at Dkt. # 375-2, identified by Dr. Barry at Dkt. # 375, at 3) **-** The court was not supplied with these emails.  Based on the descriptions provided in the privilege log, Medtronic has represented that these emails are between Medtronic employees and an attorney either seeking or providing legal advice related to TL Vertebral Body Derotation and does not relate to Dr. Barry's patents (*see* Opp., Dkt. # 381, at 3).  This does not meet its burden of proof by a preponderance of the evidence.  Medtronic is not required to produce these emails.  **It is therefore ORDERED that Medtronic shall produce unredacted versions to Dr. Barry by November 1, 2016, at 4:00 p.m.**  Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **Privilege log entries ## 90-91, 92, and 96-98** (on Privilege log at Dkt. # 375-2, identified by Dr. Barry at Dkt. # 375, at 3) **-** The court was not supplied with these emails.  Based on the descriptions provided in the privilege log and Medtronic's Opposition, Medtronic has stated but not proven by a preponderance of the evidence that these are communications between Medtronic employees and an attorney either seeking or providing legal advice (*see* Opp., Dkt. # 381, at 3).  **It is therefore ORDERED that Medtronic shall produce unredacted versions to Dr. Barry by November 1, 2016, at 4:00 p.m.**  Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

- **Privilege log entry # 217** (on Privilege log at Dkt. # 375-2, identified by Dr. Barry at Dkt. #375, at 3) **-** The court was not supplied with this email.  Based on the description provided in the privilege log and Medtronic's Opposition, Medtronic stated but did not prove that these emails are between Medtronic employees and an attorney either seeking or providing legal advice related to a Medtronic patent.  **It is therefore ORDERED that Medtronic shall produce unredacted versions to Dr. Barry by November 1, 2016, at 4:00 p.m.**

Notwithstanding a non-privilege objection at trial, Dr. Barry is permitted to use the unredacted version, regardless of whether a redacted version was produced.

**c. Documents that Medtronic has demonstrated are privileged or work product.**

Following an *in camera* review, the court concludes that the following documents appear to be privileged or protected as work product.  It is therefore ORDERED IN LIMINE that Dr. Barry may use only redacted versions of these documents, if available, at trial.  If no redacted version was produced, Dr. Barry must approach the bench outside the presence of the jury and demonstrate why the information is relevant and why circumstances would justify lifting the work-product protection.

- **MED00161742-43 (Tab E),** which subsumes the emails at **MED 00161741, MED00151744, MED00151745** (Tabs **F, G, and H**, Dkts.  ## 375-6, 375-7, 375-8, 375-9) **–** These are all **post-complaint** emails which appear on their face to be requests for information related to the suit or responses to those requests.  *See* Medtronic Opp., Dkt. # 381, at 3.  The *in limine* ruling above applies.
- **MED00161746** (Tab **K**, Dkt.  # 375-12) **–** These are all **post-complaint** emails that on their face appear to be to and from a senior legal secretary of Medtronic regarding information relevant to the suit.  *See* Medtronic Opp., Dkt. # 381, at 3.  The *in limine* ruling above applies.

**d. Documents that were not submitted by Dr. Barry but comprise part of the 409 clawed-back documents.**

Those documents that were not submitted to the court for *in camera* review by Dr. Barry (Dkt. # 375) were not considered by the court.  The court has made no determination as to whether these documents are privileged or whether they were properly clawed back.

**e. Dr. Barry's Motion for Evidentiary Sanctions (Dkt. # 364)**

In addition to requesting a finding of waiver, Dr. Barry also moved for discovery sanctions based on Medtronic's email production.  Dr. Barry requested four things: (1) leave to amend his exhibit list; (2) a court order that Medtronic's witnesses may not address these documents unless Dr. Barry asks first; (3) a court order that the "accused products" include Solera screws and rods; and (4) a finding that Ms. Hosfield is precluded from offering opinions

critical of Dr. Barry's damages expert on a certain narrow topic.  *See* Dr. Barry Motion for Sanctions, Dkt. # 364, at 18.    At this point, a traditional sanction analysis is not required.

Given the late date of production and the court's ruling, allowing Dr. Barry to amend his exhibit list is not a sanction on Medtronic.  Dr. Barry is GRANTED leave to amend his exhibit list (request number (1) above) to include the documents listed above for which privilege was not upheld, or for which the introduction was limited by an *in limine* ruling.

Dr. Barry's request for a court order that Medtronic's witnesses may not address these documents unless Dr. Barry asks about the documents first (request number (2) above) is GRANTED IN LIMINE.  The documents provided to the court are all Medtronic documents, and as such they would be inadmissible hearsay in the event that Medtronic attempts to admit the documents into evidence.  Before Medtronic seeks to use any of this subset of documents before one of Dr. Barry's witnesses discusses the document, Medtronic shall approach the bench outside the presence of the jury and show why, in light of the timing of the production, it would be unfairly prejudicial for the court to deny such use of the document, and how the document is not precluded by the hearsay rule.

Dr. Barry's requests articulated above in items (3) and (4) are DENIED.  The court was not presented with documents in Dr. Barry's subsequent filing of a subset of documents that justify granting these requests.[4]

---

[4] Dr. Barry's objections based on untimely production of the emails are overruled.  Despite the court's Order to timely phase the email productions (Dkt. # 24, at 3, ¶ 7), the parties agreed to exchange emails on August 31, 2016.  (Medtronic Opp. to Dr. Barry's Motion for Sanctions, Dkt. # 367, Ex. K; Dr. Barry's Motion for Finding of Waiver, Dkt. # 360, at Dkt. # 360-3) (emails between the parties demonstrating agreement that the parties were to exchange on August 31st).  Even if the court were to find that Medtronic withheld information, which it might have, any failure to timely disclose the emails was substantially justified based on the parties' agreement.  FED. R. CIV. P. 37(c)(1).  Further any prejudice that may have resulted due to Medtronic's alleged failure can be cured by Dr. Barry's ability to use any non-privileged documents at trial.

Dr. Barry also properly raised an objection that the August 31, 2016 email production demonstrates that Medtronic previously withheld relevant documents and information.  After the *in camera* review of this subset of documents, the court is inclined to agree, but reserves ordering sanctions related to this alleged withholding until a later date.

**f. Conclusion**

It is THEREFORE ORDERED that the parties shall comply with the deadlines ordered above that are specific to certain documents.

It is FURTHER ORDERED that Dr. Barry shall be permitted to amend his exhibit list to conform to the allowances and exclusions in this Order.

It is FURTHER ORDERED that Dr. Barry's Emergency Motion for Determination of Waiver of Privilege Under Fed. R. Civ. P. 26 (b)(5)B) and 37 (b)-(c) (Dkt. # 360) is GRANTED IN PART, DENIED IN PART, as set out above.

It is FURTHER ORDERED that Dr. Barry's motion for evidentiary sanctions (Dkt. # 364) is GRANTED IN PART, DENIED IN PART, as set out above.

So **ORDERED** and **SIGNED** this **31** day of **October, 2016.**

_____
Ron Clark, United States District Judge