# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| MARK A. BARRY, M.D., | Civil Action No. 1:14-cv-104 |
| Plaintiff, | **CHIEF JUDGE RON CLARK** |
| v. | |
| MEDTRONIC, INC., | |
| Defendant. | |

## IN LIMINE RULINGS ON OBJECTIONS TO DEPOSITION TESTIMONY
## TO BE PLAYED ON NOVEMBER 3, 2016 - Part 1

The court enters this order regarding objections to designations of two of the witnesses. The court reminds counsel that it has more than one case on its docket, and more than one set of parties filing what are deemed to be "emergencies." Filings of objections that are not made early enough so that the court has time to consider and rule are subject to being deemed waived. The rulings on the designations for the depositions of Mr. Cuellar and Ms. Munro are attached.

So **ORDERED** and **SIGNED** this **2** day of **November, 2016.**

_____
Ron Clark, United States District Judge

Pursuant to the Pretrial Order (ECF No. 386) and agreement of the parties, Plaintiff Mark A. Barry, M.D. ("Dr. Barry") hereby submits the parties' unresolved objections to the deposition testimony of Richard Cuellar, Robert Pfefferkorn, and Janice Munro (and associated exhibits), which Dr. Barry intended to be played at trial on November 3, 2016. On November 1-2, 2016, the parties met and conferred, and the unresolved objections are included in the tables enclosed herewith. The parties respectfully request the Court's ruling on these issues so that the final deposition videos can be prepared this evening.

## Richard Cuellar

*Medtronic's Objections to Dr. Barry's Designations, Counter-Designations, and Exhibits*

| Lines | Medtronic's Objection | Dr. Barry's Response | Court's Ruling |
|---|---|---|---|
| 58:8-24 | FRE 802, this is hearsay. | Dr. Barry's designation is not hearsay because there is no out of court statement being offered for the truth of the matter asserted. | Overruled |
| 97:06-97:13 | MIL 2<br><br>This testimony does not relate to "confidentiality in general or confidentiality that exists independent of written nondisclosure agreements" as Plaintiff contends.  Rather, the witness was asked 2 specific questions: "Do you know whether Interpore entered any confidentiality or nondisclosure agreements with Dr. Barry regarding his surgeries" and "Did you ever receive a written document for confidentiality or nondisclosure between Interpore and Dr .Barry" (97:6-8, 97:10-12).The Court's ruling on Medtronic's MIL 2 is clear. The Court excluded "written and digital nondisclosure agreements" that have not been produced by Dr. Barry "and references and allusions to the existence of such documents." (Dkt. 379 at 2).  The designated testimony goes to the heart of what has been excluded and should not be played for the jury. | The Court's ruling on Medtronic's MIL 2 does not preclude testimony regarding confidentiality in general or confidentiality that exists independent of written nondisclosure agreements, including, for instance, whether they kept information confidential for reasons not connected to an unproduced written agreement. 97:6-9 does not refer to written agreements.  At 97:10-13, the witness affirmatively said that he had no recollection of a written agreement. | Sustained.  This deals with an agreement, which in context would only be relevant if Dr. Barry was a party to it or at least aware of it.  No showing that Dr. Barry ever produced such a document or identified it with an explanation as to why a copy could not be located.  The court does not recall that Plaintiff has made a showing, or even alleged, that it disclosed as to Interpore,  the name of a person with knowledge concerning the existence of,  a verbal agreement to maintain confidentiality or the existence of an understanding or custom of confidentiality.  If such an unwriten agreement existed Barry would have known about it<br>and should have met the disclosure requirements of Fed.R. Civ. P 26 and the Order Governing Proceedings (Doc. # 11). |

*Dr. Barry's Objections to Medtronic's Designations, Counter-Designations, and Exhibits*

| Lines | Dr. Barry's Objection | Medtronic's Response | Court's Ruling |
|---|---|---|---|
| 100:7-12, 100:14-15 | Medtronic's countered testimony should be excluded because it is:<br>1. Not needed to provide complete testimony to 58:08-24.<br>2. Is precluded by Dr. Barry's MIL No. 4 precluding discussion of experimental surgeries implicating medical ethics.<br>3. FRE 602 – calls for speculation re: "actual surgery" and whether "instruments are commercially usable."<br>4. FRE 701 – calls for expert opinion. | Medtronic insists on this designation so that it may obtain a ruling on the Court's exclusion and, if necessary, make an offer of proof under Federal Rule of Evidence 103. | 1. Overruled. This is a counter-designation, not request to include material under the rule of optional completeness.<br><br>2. Overruled<br><br>3. Overruled<br><br>4. Overruled |
| 121:25 – 122:3 | FRE 701 – calls for expert testimony re: whether technique worked for its intended purpose. FRE 402/403. | The testimony at 121:25 – 122:3 is based on the witness's personal observations of Dr. Barry's surgeries (to which he testified, and will be played to the jury), as well as on his tenure in the surgical and medical device fields. By responding "I would agree, yes" when asked "So when you are observing Dr. Barry's surgery you would say his technique was effective at that time," the witness has not given any expert testimony. And, as Plaintiff's dates of conception and reduction to practice are at issue in this case, the testimony relating to surgery performed by Dr. Barry close to, and likely before, the critical date (December 30, 2003) is relevant. Plaintiff has offered no explanation as to why this testimony is more prejudicial than probative under FRE 403. | Overruled as to 121:25 – 122:3. Π's argument goes to wording of 122:4-6; if those are the lines for which the objection is intended then sustained – witness not designated as an expert on whether a surgical technique or instruments "were working for" an intended purpose and no basis to show that he could devine Dr. Barry's "intended" purpose. |

| Lines | Dr. Barry's Objection | Medtronic's Response | Court's Ruling |
|---|---|---|---|
| 122:18-21 | FRE 701 – calls for expert testimony re: whether technique worked for its intended purpose. FRE 402/403. | The designated testimony is not improper opinion testimony. (Q: From your perspective, the derotation instruments that you saw him use were working for the intended purpose? A: I believe so, yes.) The witness is testifying based on his personal observations and experience in the surgical / medical device field, and the testimony does not fall within the confines of FRE 702 reserved for expert witnesses. | Sustained. Not designated as an expert on whether a surgical technique or instruments "were working for" an intended purpose and no basis to show that he could devine Dr. Barry's "intended" purpose. |

## Janice Munro

*Medtronic's Objections to Dr. Barry's Designations, Counter-Designations, and Exhibits*

The parties' primary dispute over Dr. Barry's designations for Ms. Munro centers on the scope of the Court's Order regarding Medtronic's motion *in liminie* No. 2.

**Dr. Barry's Position:** Dr. Barry understands the Court's Order to apply to written and digital confidentiality agreements. *See* ECF No. 379 at 2 ("Granted as to all written and digital nondisclosure agreements and references and allusions to the existence of such documents."). The Order does not, however, prevent witnesses from testifying about confidentiality in general—including, for instance, whether they kept information confidential for reasons not connected to an unproduced written agreement.

**Medtronic's Position:** The Court clearly granted Medtronic's motion *in limine* number 2, stating that the parties cannot allude to the existence of confidentiality agreements that were not produced. Where a party attempts to present testimony regarding a witness being bound by some obligation to keep Dr. Barry's information confidential, this is a violation of the Court's order. However, Medtronic must, as a part of its invalidity case, prove that Dr. Barry's work was not kept confidential. As such, Medtronic should be permitted to confirm where a witness did not execute a confidentiality or nondisclosure agreement with Dr. Barry. Confirming that an agreement did not exist does not conflict with the Court's ruling that prohibits the parties from implying that such a document did exist.

| Lines | Medtronic's Objection | Dr. Barry's Response | Court's Ruling |
|---|---|---|---|
| 67:13-68:23 | 67:13-20<br>67:22 – 68:5<br>68:7-12<br>68:14-23<br><br>This violates the Court's ruling on MIL number 2. The witness' statement that she was under the impression that what occurred in the operating room is an allusion to the existence of a confidentiality agreement. | Here, in relevant part, the witness responded that "I was under the impression that everything that I did in the operating room was confidential." Medtronic's counsel had asked whether there was "any confidentiality agreement between you and Dr. Barry…" There was no mention of a written or electronic agreement. This and the remaining portions of the disputed testimony should not be excluded under MIL #2. | Overruled. No testimony about an "agreement" was given, and counsel, although evidently trying to establish that Dr. Barry failed to have the nurse sign a confidentiality agreement, asked the witness a different question; and he allowed the witness to answer about her impressions. As opposed to specific question of, and answer by, Mr. Cuellar, there is no basis to conclude that π failed to disclose information he would have been expected to know and disclose. |

| Lines | Medtronic's Objection | Dr. Barry's Response | Court's Ruling |
|---|---|---|---|
| 71:10-72:13; 72:15-72:15 | This violates the Court's ruling on MIL number 2. The witness confirms some obligation to keep Dr. Barry's work confidential without explaining her basis for the belief. She has alluded to a confidentiality agreement. | See above regarding MIL #2. The witness also testified about her belief and gave her opinions about confidentiality that applies in the operating room; Medtronic's MIL #2. There is no mention or reference to any written or digital agreements that might have been, but were not, produced. She explained that she did not have a confidentiality agreement with Dr. Barry. The questions were leading; the fact that the witness did not limit her answers to "yes" or "no" does not make her answers nonresponsive. | Overruled.  Same basis as ruling on preceding objection. |
| 79:24-80:22 | This violates the Court's ruling on MIL number 2. By designating this testimony, it appears Dr. Barry is attempting to imply that because Ms. Munro signed a confidentiality agreement with her employer, that agreement extended to Dr. Barry's work. This is contrary to the Court's order, which prohibits the parties from alluding to the existence of a confidentiality agreement. | See above regarding MIL #2. Further, Medtronic's MIL focused on agreements between Dr. Barry and third parties. Here, Medtronic elicited testimony from a third-party fact witness about an agreement she has with the hospital where she works. Such testimony should not fall within the ambit of the Court's Order.  She testified about an agreement that she signs on an annual basis.  Yet again, the fact that the witness did not limit her answers to "yes" or "no" in response to leading questions does not render it nonresponsive. | Overruled.  Same basis as preceding objection.  Dr. Barry did not elicit any of this testimony, and in fact his attorney interposed several objections.  The court has seen no indication that the witness stated or implied that she had a confidentiality agreement with Dr. Barry.  And there is no showing that Dr. Barry would have had knowledge of, or attempted to bring out, any evidence of an agreement between the witness and the hospital  such that a duty of disclosure was imposed on him in this regard. |

*Dr. Barry's Objections to Medtronic's Designations, Counter-Designations, and Exhibits*

| Lines | Dr. Barry's Objection | Medtronic's Response | Court's Ruling |
|---|---|---|---|
| 43:2-3 43:5-6 | Any testimony regarding application of HIPAA to third parties is speculation.  Potentially also violates Medtronic's MIL #2. | This designation does not contain any speculation. The witness states that she does not know the answer to the question, which is important background for some of Dr. Barry's other designations. A blanket exclusion of testimony relating to HIPAA is also improper. If the proper foundation is laid, or the witness testifies that she does not have the knowledge to answer the question, the testimony is not speculative. There is no allusion to an | Sustained. |

| Lines | Dr. Barry's Objection | Medtronic's Response | Court's Ruling |
|---|---|---|---|
|  |  | agreement between Dr. Barry and the witness. |  |
| 57:19-21<br>57:23-24 | Too speculative; does not ask about Dr. Barry's surgeries or those that Dr. Barry conducted in the relevant time period. | This does not call for speculation. The witness testifies as to whether it was possible for a specific situation to occur. She previously testified as to her experience at the hospital and in surgery. She is testifying based upon her own experiences. | Overruled |
| 72:15-18<br>72:20<br>72:22 – 73:12<br>73:14 | Violates Medtronic's MIL #2. This line of questioning focuses on the witness's knowledge about confidentiality agreements between Dr. Barry and the hospital, nurses, vendors, and other third parties. The witness generally responds "I don't know" when asked about whether such agreements exist. As this Court explained, its rulings on the MILs are reciprocal. Medtronic cannot try to exclude testimony that touches upon confidentiality agreements when it is harmful to its case, yet try to include that testimony when it is helpful. | Dr. Barry has misconstrued the Court's order. The Court stated that the parties cannot present evidence of confidentiality agreements that have not been produced by Dr. Barry, and that the parties cannot allude to the existence of such documents. However, this ruling does not prevent Medtronic from pointing out that there was a *lack* of any agreement. | Overruled. |
| 120:13-22<br>120:24-121:1<br>120:2-6<br>120:8-11<br>121:11-15<br>121:17-122:3<br>121:3-4<br>121:6-9<br>122:25-25<br>122:6-23<br>123:2-6<br>124:8-21 | Violates Dr. Barry's MIL #4. In this line of testimony, Medtronic asked the witness, a nurse, multiple questions about experimental surgeries. For instance, Medtronic asked whether "Dr. Barry ever told patients or their guardians that they were the subjects of experimental procedures?" This is precisely the type of testimony that the Court's Order excluded, namely, "testimony regarding Dr. Barry's surgeries being 'experimental' in the context of medical ethics." ECF No. 378, at 1. Any argument by Medtronic that its questions (or the witness's answers) failed to differentiate between *medical* versus *patent law* experimentation is a red herring. | Medtronic insists on this designation so that it may obtain a ruling on the Court's exclusion and, if necessary, make an offer of proof under Federal Rule of Evidence 103. | This designation makes little sense. Example: 120:13-22 followed by 120:24 – 121:1 followed by 120:2-6 and 120:8-11. Then there is a designation of 122:3 followed by 121:3-4 and 121:6-9 followed by 122:25-25 and then a jump back to 122:6-23. A party can not take sentences out of order, mix and match them to obtain a desired result and then say it "insists on this designation . . ." Medtronic may not play this designation of testimony to the jury. |